[No. A121567. First Dist., Div. Four. Oct. 7, 2009.]

PARAGON REAL ESTATE GROUP OF SAN FRANCISCO, INC., et al., Cross-complainants and Appellants, v.
PETER HANSEN et al., Cross-defendants and Respondents.

COUNSEL

Parker & Crosland, David M. Parker and C. Royda Crosland for Cross-complainants and Appellants.

Livingston♦Mix, Mary E. Mix, Dennis L. Livingston for Cross-defendants and Respondents.

OPINION

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Over 30 years ago, our Supreme Court announced that where joint tortfeasors are liable for a plaintiff's injuries, they are entitled to have their liability apportioned among themselves on the basis of their comparative fault. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899] (*American Motorcycle*).) As a procedural matter, the court held that an equitable apportionment of liability among joint tortfeasors could be accomplished through the filing of a cross-complaint seeking equitable indemnity. (*Id.* at p. 584.)

In this case, defendants Paragon Real Estate Group of San Francisco, Inc., and two of its principals, Linda Harrison and Ellen Anderson (collectively referred to in the singular as Paragon), filed a first amended cross-complaint for equitable indemnity (cross-complaint) against codefendants Peter Hansen and Peter Hansen & Co. (collectively referred to in the singular as Hansen). However, the trial court entered a judgment of dismissal after it sustained Hansen's demurrer to Paragon's cross-complaint without leave to amend. The trial court concluded that the cross-complaint was unnecessary because both Paragon and Hansen were named as defendants in the action, and an allocation of fault would occur anyway in the course of adjudicating the plaintiff's claim.

We disagree with the trial court's conclusion that, because Paragon and Hansen were named defendants, Paragon was precluded from filing a cross-complaint seeking equitable indemnity. In reversing the judgment, we also hold that the circumstances of this case do not bring it within the limited exception barring the assertion of a cross-complaint where to do so would

operate inequitably or in derogation of public policy. (See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 109–110 [32 Cal.Rptr.2d 263, 876 P.2d 1062] (*Western Steamship*).)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karen S. Park (Park) filed an action in the Alameda County Superior Court arising out of her purchase of real property located at 5 Oak Street Path in Berkeley, California (the Park property). Park sought damages allegedly resulting from the failure to disclose the existence of an easement which burdened the Park property in favor of an adjoining parcel of land owned by Sara Lee and Michael Tripp. The easement holders sued Park (the Lee action) for which Park also sought indemnity against all defendants. Among the named defendants were appellant Paragon and respondent Hansen. Paragon acted as real estate broker for Park in the purchase of the Park property, and Hansen represented the sellers.

Park's complaint against Paragon asserted causes of action for negligence, breach of contract, and equitable indemnity. Park alleged that Paragon failed to advise her properly on how to protect her interests against the potential (and then actualized) easement claims by Lee. Park alleged that she had a right to equitable indemnity against Paragon because she has had to incur attorney fees and costs in defense of the Lee action.

Park's complaint against Hansen asserted causes of action for nondisclosure, negligent misrepresentation, violation of Civil Code section 1710, subdivision 2, and equitable indemnity. In essence, Park alleged that Hansen (1) failed to disclose all material facts concerning Lee's easement claim, (2) misrepresented the effect of a letter concerning the validity of Lee's easement claim, and (3) breached an oral agreement to obtain adequate assurances that Lee would not assert an easement claim against the property. Park also alleged a right to equitable indemnity against Hansen to recover the attorney fees and costs that she has incurred in defending the Lee action.

A cross-complaint was filed in due course by Paragon against Hansen and the sellers of the Park property seeking "equitable implied indemnity, comparative indemnity, comparative contribution, total equitable indemnity, implied contractual indemnity and declaratory relief." Hansen filed a demurrer to that cross-complaint, which was sustained with leave to amend.

Thereafter, Paragon filed the cross-complaint at issue in this appeal, alleging a single cause of action for "equitable indemnity based on comparative fault" against Hansen, the sellers of the Park property, and others.

Hansen filed another demurrer, contending that the cross-complaint failed to state facts sufficient to constitute a cause of action, or alternatively, that the cross-complaint was vague and uncertain.

Essentially, Hansen claimed that our Supreme Court's holding in *American Motorcycle, supra*, 20 Cal.3d 578, sanctioned a cross-complaint for equitable indemnity on the basis of comparative fault only against an alleged third party joint tortfeasor not already named as a defendant by the plaintiff. Hansen argued that because it had already been named as a defendant in this action, a "determination of liability of comparative fault will be part of the Plaintiff's judgment"; therefore, Paragon's cross-complaint was "improper and unnecessary." In opposition, Paragon contended that Hansen's reading of *American Motorcycle* was "plainly wrong" and that this decision provided "specific, express authority" for its cross-complaint against Hansen.

After hearing oral argument, the trial court issued an order sustaining Hansen's demurrer to the cross-complaint without leave to amend. By way of explanation, the court stated: "Equitable indemnity is properly denied where the same relief is available in the underlying action. (See *Leko v. Cornerstone B[ldg.] Inspection Service* (2001) 86 Cal.App.4th 1109, 1118 [103 Cal.Rptr.2d 858].) Hansen and Paragon are already both Defendants in the underlying action by Park. Paragon cannot state an independent cause of action for equitable indemnity against this joint tortfeasor." As a result, the cross-complaint was ordered dismissed as to Hansen. This timely appeal followed.[1]

## III.

## LEGAL DISCUSSION

### A.   Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has

---

[1] "Where a defendant cross-complains against a third party or against a codefendant, the dismissal of the cross-complaint is a final adverse adjudication of the cross-complainant's rights against a distinct party, and the order is appealable. [Citations.]" (*County of Los Angeles v. Guerrero* (1989) 209 Cal.App.3d 1149, 1152, fn. 2 [257 Cal.Rptr. 787].)

stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].)

### B. Paragon's Claim for Equitable Indemnity Against Hansen Was Properly Asserted by Cross-complaint

On appeal, Hansen claims that Paragon's cross-complaint is "superfluous" in a case such as this where all of the parties are already before the court, and "the issues of comparative and contributory negligence and apportionment of fault are already pled." Hansen contends that dismissal of Paragon's cross-complaint was proper because "apportionment [of fault] can be accomplished by assertion of affirmative defenses." Thus, "permitting unnecessary cross-complaints in the instant case would simply confuse and complicate a straight-forward proceeding."

These contentions are best answered by reference to the plain language of Code of Civil Procedure section 428.10, subdivision (b),[2] which explicitly permits "[a] party against whom a cause of action has been asserted in a complaint or cross-complaint" to file a cross-complaint setting forth "[a]ny cause of action he has against a person alleged to be liable thereon, *whether or not such person is already a party to the action* . . . ." (Italics added.)

In *American Motorcycle*, 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], our Supreme Court had an opportunity to construe section 428.10, subdivision (b), in the context of joint tortfeasors. *American Motorcycle* followed by three years the seminal decision in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. *Li* held that California's common law doctrine of "all-or-nothing" contributory negligence should be replaced by a rule of comparative negligence. (*American Motorcycle, supra*, at pp. 582–583.) The Supreme Court in *American Motorcycle* decided several separate issues left undecided in *Li* pertaining to multiple-party tort litigation. These issues included whether to abandon the "all-or-nothing" common law indemnity doctrine, in favor of allowing a joint tortfeasor to obtain indemnity from other tortfeasors on a comparative fault basis. (*Id.* at p. 595.)

After rejecting the "all-or-nothing" doctrine in favor of comparative fault, the court then considered whether a defendant can join another alleged

---

[2] All subsequent undesignated statutory references are to the Code of Civil Procedure.

tortfeasor by cross-complaint. The court determined that the defendant may do so, even when the alleged tortfeasor has not been named as a defendant in the lawsuit. (*American Motorcycle, supra*, 20 Cal.3d at p. 607.) In a critical passage, the court held that "under the governing provisions of . . . Code of Civil Procedure [section 428.10, subdivision (b)], a named defendant is authorized to file a cross-complaint against any person, *whether already a party to the action or not*, from whom the named defendant seeks to obtain total or partial indemnity. Although the trial court retains the authority to postpone the trial of the indemnity question if it believes such action is appropriate to avoid unduly complicating the plaintiff's suit, *the court may not preclude the filing of such a cross-complaint altogether.*" (*American Motorcycle, supra*, at p. 584, italics added; see also *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1197–1198 [246 Cal.Rptr. 629, 753 P.2d 585] [under the principles articulated in *American Motorcycle*, a defendant may pursue a comparative equitable indemnity claim against another tortfeasor "by filing a cross-complaint in the original tort action"].)

Similarly, in *Daon Corp. v. Place Homeowners Assn.* (1989) 207 Cal.App.3d 1449 [255 Cal.Rptr. 448] (*Daon*), this division construed section 428.10, subdivision (b) in the context of concurrent tortfeasors and held that "[u]nder this section a defendant may file a cross-complaint against any person from whom the defendant seeks total or partial indemnity on the basis of comparative fault. [Citation.]" (*Daon, supra*, at p. 1455.) As support for the above cited proposition, *Daon* relied on *American Motorcycle, supra*, 20 Cal.3d 578.

Although Paragon referred to *American Motorcycle* at length in the trial court proceedings, both in its briefs and at the hearing on the demurrer, the trial court's order sustaining the demurrer does not mention it, and instead cites *Leko v. Cornerstone Bldg. Inspection Service, supra*, 86 Cal.App.4th at page 1118 (*Leko*), as sole authority for the proposition that Paragon is not entitled to maintain its cross-complaint against Hansen because "the same relief is available in the underlying action." In so holding, the trial court implicitly endorsed Hansen's argument that "[w]here all of the parties (or their legal equivalents) are already before the court and the issues of comparative and contributory negligence and apportionment of fault are already pled, a cross-complaint is superfluous."

In *Leko*, a home purchaser sued the sellers and real estate agents for failing to disclose structural defects caused by an earthquake. The real estate agents cross-complained against several home inspection companies who had not been sued by the home purchaser, seeking equitable indemnity. (*Leko, supra*, 86 Cal.App.4th at p. 1113.) The *Leko* court applied well-established principles set out in *American Motorcycle* and permitted the real estate agents to

maintain a cross-complaint seeking equitable indemnity against the home inspection companies. (*Leko, supra*, at pp. 1112–1113.)

Among the policy reasons favoring a right to assert equitable indemnity against the home inspection companies, the court mentioned that the home purchaser had not directly sued the home inspection companies, and "no equivalent relief will be available to a realtor defendant in the main action." (*Leko, supra*, 86 Cal.App.4th at p. 1118.) The court cited the case of *Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188 [246 Cal.Rptr. 432] (*Jaffe*), for the proposition that "[e]quitable indemnity has also been denied in cases where equivalent relief is already available in the main action." (*Leko, supra*, at p. 1118.) But, *Jaffe* involved claims far different from those asserted in *Leko*, and therefore, the *Leko* court's reliance on *Jaffe* for the quoted proposition was dubious. More importantly, the *Leko* court went awry in leaving the false implication that, had the home inspection companies been named as defendants, there would have been equivalent relief available, thus making the assertion of an equitable indemnity claim improper. The *Jaffe* decision does not support this implication.

In *Jaffe*, a suit was brought by a homeowners association against developers of a condominium complex for construction defects. The question presented was whether the developer defendants could seek equitable indemnity by cross-complaining against the individual members of the homeowners association's board of directors. (*Jaffe, supra*, 200 Cal.App.3d at p. 1191.) The *Jaffe* court affirmed the refusal to allow the cross-complaint, pointing out that the "acts and omissions of the board which the Developers allege contributed to the harm done the Association relate to the board's management of the complex. In a legal sense such acts and omissions were the conduct of the Association itself." (*Id.* at p. 1192.) Because the association's board of directors was determined to be an entity inseparable from the homeowners association, the board's wrongful conduct would be accounted for in the main action under comparative fault principles without a cross-complaint being filed against the individual board members. (*Ibid.*; see also *Gentry Construction Co. v. Superior Court* (1989) 212 Cal.App.3d 177, 182 [260 Cal.Rptr. 421].)

Moreover, a close reading of *Jaffe* readily reveals that, for public policy reasons, the court was loathe to allow the developers to insinuate themselves into the "special relationship" between the homeowners association and its board members. "Of equal consideration in our hesitancy to utilize the doctrine of equitable indemnity where it is legally unnecessary is our hesitancy to employ it where to do so will jeopardize or entangle a special relationship which strong policies dictate be preserved." (*Jaffe, supra*, 200 Cal.App.3d at p. 1193.)

Therefore, it does violence to the careful, limited scope of the *Jaffe* opinion to read it as broadly holding that equitable indemnity claims are improperly asserted whenever a named defendant seeks to do so against another named defendant. In this respect, the trial court, and by implication the *Leko* court, have misread *Jaffe*. Indeed, *Jaffe* did not even involve a circumstance where one named defendant was seeking to file a cross-complaint against another named defendant.

In addition to *Jaffe*, Hansen also cited *Lauriedale Associates, Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439 [9 Cal.Rptr.2d 774] (*Lauriedale*) in support of its core position. In *Lauriedale*, a homeowners association filed an action against a developer for construction defects. The developer responded by filing cross-complaints for equitable indemnity against over 700 persons who were, or had been, unit owners, alleging that it was the owners, and not the developer, who had misused the property and thus caused damage to the common areas. One unit owner demurred, and the demurrer was sustained without leave to amend.

The Court of Appeal affirmed because *both* factors articulated in *Jaffe* were present. (*Lauriedale, supra,* 7 Cal.App.4th at pp. 1442–1443.) First, the relationship between the plaintiff homeowners association and the individual property owners in *Lauriedale* made them essentially one and the same party, which led the court to hold that the affirmative defense of comparative negligence would be sufficient to protect the defendants' rights to have fault apportioned.

In addition, like the *Jaffe* court, the panel in *Lauriedale* was concerned that allowing a cross-complaint for equitable indemnity against the unit owners would "jeopardize the special relationship between the Association and its members, *one characterized as fiduciary in nature.* [Citation.]" (*Lauriedale, supra,* 7 Cal.App.4th at p. 1445, italics added.) Also, "to the extent [the developers] can prove the[] affirmative defense [asserted in their answer], the Association's recovery will be diminished under principles of comparative negligence. [Citation.]" (*Id.* at p. 1444.) Once again, like *Jaffe, Lauriedale* did not involve the assertion of equitable indemnity claims between two named defendants.

The factors that proved persuasive in *Jaffe* and *Lauriedale* are simply not found in the case before us. *Jaffe* and *Lauriedale* involved the limited circumstances where a cross-complaint for equitable indemnity would "jeopardize or entangle a special relationship." No California case has been brought to our attention that has refused to allow a defendant the right to seek equitable indemnity from another alleged tortfeasor simply because the defendant is able to assert a comparative negligence affirmative defense at

trial in the underlying action. (*Jaffe, supra,* 200 Cal.App.3d at p. 1193.) In fact, in *Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439 [266 Cal.Rptr. 601] (*Platt*), the same court that decided *Jaffe* considered and rejected this very proposition.

*Platt* was a legal malpractice action where the appellate court reversed the trial court's dismissal of the defendant lawyers' cross-complaint for equitable indemnity against a third party. On appeal, the third party contended that because its liability derived solely from the plaintiff's liability, the trial court had properly dismissed the lawyers' cross-complaint for equitable indemnity "because equivalent relief is available to [the lawyers] by virtue of their comparative negligence affirmative defense." (*Platt, supra,* 217 Cal.App.3d at p. 1445.)

The Court of Appeal reversed, noting that "[g]iven the strong policies favoring equitable indemnity cross-complaints, we see no reason to extend *Jaffe* beyond its own facts." (*Platt, supra,* 217 Cal.App.3d at p. 1449.) The court explained, "Neither *Jaffe* nor the other [cited] cases . . . support an assertion that, as a matter of law, a cross-complaint for equitable indemnity fails to state a cause of action *whenever* resolution of the main action will apportion liability. Such a rule would be contrary to the Supreme Court's statements in *American Motorcycle*[, *supra,*] 20 Cal.3d 578 . . . ." "[Rather], *American Motorcycle* implicitly rejects the assertion a cross-complaint is improper whenever liability can be apportioned in the main action." (*Platt, supra,* at p. 1446, original italics.)

The *Platt* court's ruling was summarized as follows: "Accordingly, a cross-complaint for equitable indemnity against an alleged joint tortfeasor states a cause of action unless, under the particular facts alleged, the cross-complaint would operate inequitably. In determining whether the cross-complaint would operate unfairly, the fact liability will be apportioned in the underlying action is not enough." (*Platt, supra,* 217 Cal.App.3d at p. 1450.)

Consequently, the *Platt* decision considered and rejected the rationale relied on here by the court below for denying Paragon the right to file a cross-complaint seeking equitable indemnity against Hansen. Specifically, the court rejected "as a matter of law" the argument that "a cross-complaint for equitable indemnity fails to state a cause of action whenever resolution of the main action will apportion liability." (*Platt, supra,* 217 Cal.App.3d at p. 1446, italics omitted.)

■ We summarize our conclusions as follows. Paragon was authorized to maintain its cross-complaint for equitable indemnity against its codefendant Hansen by the express provisions of section 428.10, subdivision (b), as

interpreted by our Supreme Court in *American Motorcycle*. Furthermore, this case is factually distinct from *Jaffe* and *Lauriedale*, which involved cross-complaints for equitable indemnity asserted by a defendant against an entity with an identity inseparable to that of the plaintiff. By contrast, this case involves the assertion of an indemnity claim between two unrelated named defendants; and the prosecution of Paragon's cross-complaint against co-defendant Hansen is not "fraught with potential conflict of interest" adversely affecting a protected special relationship. (*Jaffe, supra*, 200 Cal.App.3d at p. 1193.)  ■  As *Platt* instructs, without a corresponding special relationship, a cross-complaint for equitable indemnity is not subject to dismissal solely because an apportionment of fault is available through the assertion of affirmative defenses—the precise rationale used to strike down the cross-complaint here. (*Platt, supra*, 217 Cal.App.3d at pp. 1447–1448.) Additionally, as will be discussed, Paragon would suffer prejudice if its cross-complaint against Hansen was dismissed and it was relegated to only a comparative negligence defense at trial.

### C.  Equitable and Public Policy Considerations Support Paragon's Cross-complaint Against Hansen

■  As already noted, "an otherwise permissible equitable indemnification claim may become improper if certain important public policy principles are violated by it." (*Forensis Group, Inc. v. Frantz, Townsend & Foldenauer* (2005) 130 Cal.App.4th 14, 35 [29 Cal.Rptr.3d 622]; see *Western Steamship, supra*, 8 Cal.4th at pp. 109–110.) We conclude that no equitable or public policy considerations prevent Paragon from asserting an equitable indemnity cross-complaint in this case. In fact, there are strong equitable and public policy concerns that support the assertion of Paragon's cross-complaint for equitable indemnity.

Paragon persistently argued below that a refusal to allow it to preserve its equitable indemnity rights against Hansen made it prejudicially vulnerable to a "day of trial" dismissal of Hansen from the case. Paragon urged that "[a]bsent the [cross-complaint], Hansen and Park are in sole control of Paragon's right to seek an apportionment of fault between Paragon and Hansen. In short, if Park chose to dismiss Hansen either (1) based on a good faith belief that Hansen lacked liability, or (2) as the result of a collusive confidential settlement, then Paragon would be deprived of its right under *American Motorcycle* . . . to seek an apportionment of Hansen's fault and the right to equitable indemnity from Hansen on the basis of that apportionment of fault" in this case.[3] Instead, Paragon would be forced to pursue new

---

[3] We note that the risk of a last-minute strategic settlement between Park and Hansen is neither rhetorical nor hypothetical. During the hearing on the demurrer, the trial judge asked

litigation against Hansen seeking equitable indemnity on the basis of comparative fault "with all of the attendant and unnecessary cost, delay and waste of judicial economy."

These points are well taken. A plaintiff retains the right to dismiss any cause of action or any defendant, even after trial has commenced. (See § 581, subd. (e).) Consequently, Park could remove Hansen from the case, leaving only the remaining defendants, including Paragon, to go to trial. In this event, an affirmative defense asserted in Paragon's answer to Park's complaint seeking apportionment of fault among the parties would be rendered useless with respect to Hansen, who would no longer be a party. If the foregoing occurred during trial, then any attempt by Paragon to file an equitable indemnity cross-complaint bringing Hansen back into the case would be vulnerable to denial on the ground that it was not timely asserted. (See, e.g., *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 558–560 [140 Cal.Rptr. 330].)

Nevertheless, Hansen contends that section 877.6 adequately protects Paragon "without the necessity of a cross-complaint," if Hansen were dismissed from the case after a settlement with Park. Section 877.6 provides a mechanism for determining whether a settlement was entered in good faith, thus discharging the settling defendant from further liability for all equitable indemnity claims. (§ 877.6, subd. (c).) Any party to an action involving two or more alleged joint tortfeasors is entitled to a hearing on the good faith of a settlement between the plaintiff and one or more of the alleged tortfeasors. (§ 877.6, subd. (a)(1).) Thus, Hansen asserts "Paragon has the right to challenge any subsequent settlement," even if there is no cross-complaint for equitable indemnity pending against Hansen. (§ 877.6, subd. (a)(2); *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822 [239 Cal.Rptr. 846].)

However, procedural requirements for good faith settlement determinations pursuant to section 877.6 include special and distinct procedures established by case law, which provide an extra measure of protection to a nonsettling defendant who has a cross-complaint pending against a settling defendant. Specifically, it is error for a court automatically to dismiss such a cross-complaint following a good faith settlement determination in the absence of a separate motion seeking to dispose of the cross-complaint, such as a demurrer, summary judgment or motion to dismiss. (See, e.g., *Shane v. Superior Court* (1984) 160 Cal.App.3d 1237, 1246 [207 Cal.Rptr. 210] (*Shane*); *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549, 553 [29 Cal.Rptr.2d 460]; but see *Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 963–964 [75 Cal.Rptr.2d 456].)

counsel for Park if such a settlement was contemplated. Counsel responded cryptically, "[w]e'll cross that bridge when we come to it."

"[E]mployment of a distinct procedure to adjudicate the effect of a judicially determined good faith settlement upon a pending action or claim not only is procedurally necessary but also serves an important salutary function: it focuses the court's attention distinctly upon two completely different substantive questions—whether the settlement was in good faith and whether the claim sought to be dismissed is of such a nature as to be barred by a good faith settlement." (*Shane, supra,* 160 Cal.App.3d at p. 1246.)

If we adopted Hansen's position, the particularized adjudication provided by these cases would not be available to Paragon because Paragon would not have a cross-complaint for equitable indemnity pending against Hansen in this proceeding. In fact, without a cross-complaint pending, it is entirely possible that Hansen would be out of the case altogether before Paragon could move for a good faith settlement determination under section 877.6, subdivision (a)(2). Allowing the filing of a cross-complaint ensures that a good faith determination under section 877.6 *precedes* a settling defendant's exit from the case—a much more beneficial and useful procedure.

Relevant public policy considerations further support Paragon's cross-complaint for equitable indemnity: "Rules permitting a joint tortfeasor to cross-complain against another joint tortfeasor for equitable indemnity 'promote the public policy considerations underlying multiparty tort litigation: the maximization of recovery to the injured party; settlement of the injured party's claim; and equitable apportionment of liability among concurrent tortfeasors.' [Citation.] Courts have 'consistently adopted procedures' promoting these policies and 'have rejected procedures which would undermine these policies.' [Citation.]" (*Platt, supra,* 217 Cal.App.3d at p. 1449.) Hansen has failed to articulate how these purposes will be furthered by a rule that prevents a named defendant from asserting a cross-complaint against another named defendant. To the contrary, not only is such a notion in direct violation of our Supreme Court's mandate in *American Motorcycle, supra,* 20 Cal.3d 578, but it will hinder the public policy goals underlying multiparty tort litigation, and it will encourage endless procedural game playing to the prejudice of the parties and the judicial system as well.

Yet, Hansen argues a different public policy issue—that allowing defendants to file equitable indemnity cross-complaints against other existing parties will cause the pleadings to multiply exponentially, creating a burden to the parties, and to the court (which must intake and house the pleadings), and will unnecessarily increase discovery.

First, pleading issues can be resolved quite simply by effective case management. At or before a case management conference, the parties can agree, if they so choose, that each defendant is deemed to have filed an

equitable indemnity cross-complaint against each other, and have that stipulation entered as part of the case management order. (See generally Cal. Rules of Court, rules 3.724, 3.727 & 3.728.) Thus, court resources will be spared from the paper avalanche Hansen portends.

But, the premise that every case such as this will be inundated by the filing of needless cross-complaints is itself faulty. There are many multiparty tort cases where, strategically, the defendants are better served by presenting a "united front" against the plaintiff or plaintiffs, and any legal squabbling is postponed unless and until liability has been established in favor of the plaintiff. For this significant population of cases, no cross-complaints will be filed until liability becomes fixed, if ever.

Finally, we doubt that discovery will change if defendants file equitable indemnity cross-complaints against each other. Presumably, whatever discovery would be needed to prove a right to equitable indemnity would be conducted anyway in connection with the plaintiff's claim, even absent a cross-complaint. If, as Hansen argues, the question of apportionment of fault is in issue in cases where the plaintiff has sued more than one defendant, then the defendants already are likely to have all the motivation they need to conduct in-depth discovery.

In any event, none of these considerations outweighs the fact that our Supreme Court spoke more than 30 years ago on this subject in *American Motorcycle*, and we are bound to follow its pronouncement authorizing equitable indemnity cross-complaints against joint tortfeasors, whether or not they are already named as parties in the action. (*American Motorcycle, supra*, 20 Cal.3d at p. 584; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Therefore, we conclude the trial court erred in sustaining Hansen's demurrer and in dismissing Paragon's cross-complaint for equitable indemnity.[4]

---

[4] Hansen posits an alternative ground for sustaining its demurrer to Paragon's equitable indemnity cross-complaint. Hansen relies on a "judicial admission" made in Paragon's pleadings, that "prior to closing [escrow,] Paragon was aware and advised Park that Lee claimed an easement" over the Park property. (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824] [a pleading valid on its face may be subject to demurrer when judicially noticed admissions render the complaint meritless].) We conclude that in the context of these pleadings, there are many factual issues in dispute, and Paragon's knowledge of Lee's claimed easement fails to demonstrate that Paragon's cross-complaint for equitable indemnity is meritless.

## IV.

## DISPOSITION

The order sustaining Hansen's demurrer to Paragon's equitable indemnity cross-complaint is reversed and vacated. The matter is remanded to the trial court for further proceedings in accordance with this opinion. Costs on appeal are awarded to Paragon.

Sepulveda, J., and Rivera, J., concurred.